**NORTHLAKE MARKETING &
SUPPLY, INC., Plaintiff,**

**v.**

**GLAVERBEL, S.A., et al., Defendants.**

No. 92 C 2732.

United States District Court,
N.D. Illinois,
Eastern Division.

March 11, 1997.

Supplemental Opinion March 12, 1997.

Jerold I. Schneider and George H. Spencer of Spencer, Frank & Schneider, Washington, D.C. and Blake Lee Harrop and John Clairborne Koski of Sonnenschein, Nath & Rosenthal, Chicago, IL, for Plaintiff.

Anthony S. DiVincenzo of Campbell & DiVincenzo, Chicago, IL and John Brezina of Brezina & Ehrlich, Oak Brook, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

This distressingly protracted litigation[1] is at long last approaching the day of reckoning (that is, trial) on the patent issues that divide the litigants. But after the parties' counsel had at long last submitted and this Court had entered the final pretrial order that states the game plan and places the case in readiness for trial, defendants Glaverbel, S.A. ("Glaverbel") and Fosbel, Inc. ("Fosbel")—collectively "Glaverbel–Fosbel"—have filed a combined Fed.R.Civ.P. ("Rule") 56 and Rule 16 motion in an effort to streamline what remains in the case. Although this Court often rejects such late-in-the-day submissions in favor of sorting everything out at trial, in this instance the Glaverbel–Fosbel motion serves a constructive purpose in narrowing the boundaries for the required evidentiary presentation.

Now at issue through the Glaverbel–Fosbel motion are several (though not all) of the remaining claims in the case:

1. Second Amended Complaint ("SAC") Count I, in which plaintiff Northlake Marketing and Supply, Inc. ("Northlake") seeks a declaratory judgment as to its claimed non-infringement of Glaverbel's United States Patents 4,792,468 ("'468 Patent") and 4,920,084 ("'084 Patent'");

2. SAC Count II, in which Northlake charges that the same two patents are invalid, as to which claim Glaverbel–Fosbel now ask for the elimination of certain issues;

3. SAC Count III, in which Northlake charges that those Glaverbel patents are unenforceable because of inequitable conduct before the Patent Office; and

4. Glaverbel's Counterclaim for infringement of the same patents, seeking damages against Northlake and its principals James Hamilton and Samuel May.

For the reasons stated in this memorandum opinion and order, the Glaverbel–Fosbel motion is granted in principal part though not in toto.

### Facts

This Court's prior opinions have had occasion to set out the background facts in this

---

1. This action, which has generated a stream of written opinions and other rulings by this Court, is by some margin the oldest case on its calendar. And the parties have also done battle in a number of other cases in other forums: in the United States District Court for the Northern District of Indiana (on more than one occasion), and in the Belgian court system as well.

dispute in some detail. There is no need to do that again here. Instead this opinion attaches the Glaverbel–Fosbel statement required by this District Court's General Rule ("GR") 12(M) to implement their current Rule 56 motion by smoking out any material factual disputes. In all material respects except as identified in the course of this opinion, Northlake has acknowledged the accuracy of that GR 12(M) statement[2]—though it disputes the legal significance of some uncontested facts presented by Glaverbel–Fosbel.

### Northlake's Count I

In response to the interrogatories that were posed to Northlake inquiring as to all facts known to it to support its claim of noninfringement, Northlake has acknowledged that it practices the art taught in both of the patents at issue, the '468 Patent and the '084 Patent. Northlake's claim of noninfringement rather rests solely on its contention that the art is old—that its own conduct simply follows the teaching of the prior art.

■ But the sole authorities on which Northlake relies in that respect are older cases in which a claimed infringer was precluded from challenging the *validity* of a patent by a legal doctrine, so that its only potential line of defense to the patentee's claim was to argue noninfringement. By contrast, here *both* infringement and validity are in issue, the situation in which the Court of Appeals for the Federal Circuit calls on the District Court to address both of those issues (see, e.g., *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1540 (Fed.Cir.1983)). And the Federal Circuit has squarely held that the *only* factor that enters into the infringement inquiry (as contrasted with the decision on validity) is a matchup between the patent's claims, as construed by the court, and the alleged infringer's activity. As *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1582 (Fed.Cir.1995) (citations and footnote omitted) has put it:

Determining whether a claim in a patent has been infringed is a two-step process: first, the claim must be interpreted, as a matter of law, to ascertain its proper scope; second, a determination must be made whether the properly construed claim reads on the accused device. The first step, claim interpretation, is a question of law. The second, infringement, is a question of fact. We first consider literal infringement, which requires that each limitation in the asserted claim be found present in the accused device or process.

Northlake has posed no dispute on that score, effectively conceding the absence of any defense in terms of that matchup. Its Count I must therefore be resolved against it: This Court declares that Northlake *does* infringe both the '468 Patent and the '084 Patent.

### Glaverbel–Fosbel Counterclaim

By definition that declaration also impacts on Glaverbel's Counterclaim. There too Northlake is foreclosed from arguing noninfringement. But not content with that, the Glaverbel–Fosbel current motion targets two other defenses asserted by Northlake: statute of limitations and laches.

■ As for Northlake's statute of limitations argument, 35 U.S.C. § 286 ("Section 286") provides:

Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action.

In that respect both sides have mischaracterized Section 286 and its effect somewhat. Even though each has cited the recent and definitive en banc decision in *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed.Cir.1992), it is almost as though neither has troubled to read that opinion's extended discussion. Although this opinion will address the *Aukerman* treatment of laches a bit later, here is that case's explana-

---

**2.** Northlake does deny certain of the matters asserted by Glaverbel–Fosbel in their GR 12(M) ¶¶ 11–13 and 18–21. But as to the first five and the last of those paragraphs, the Northlake "de-nial" simply reflects a different view of the applicable law, while as to GR 12(M) ¶ 20 this opinion finds that it is necessary to resolve the disputed issue at trial.

tion (*id.* at 1030 (footnote omitted)) of the function of Section 286:

> As explained in *Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.*, 754 F.2d 345, 347–48, 224 USPQ 863, 865–66 (Fed. Cir.1985), section 286 is not a statute of limitations in the sense of barring a suit for infringement. Assuming a finding of liability, the effect of section 286 is to limit recovery to damages for infringing acts committed within six years of the date of the filing of the infringement action. One counts backwards from the date of the complaint to limit pre-filing damages arbitrarily.

How does that backward-counting process operate where, as here, the counterclaim charging infringement was first tendered well after the counterclaimants' answers were originally filed? There is no question (1) that the Glaverbel–Fosbel offensive Counterclaim charging infringement is a "compulsory counterclaim" to Northlake's Count I challenge within the meaning of Rule 13(a) [3] and (2) that under Rule 15(c)(2) the Counterclaim's assertion in June 1996 therefore dates back to each defendant's filing of its answer.[4]

So the real question is not one of a statute of limitations as such (for there is none), but rather as to the appropriate date from which the Glaverbel–Fosbel damages would be calculated if they were to prevail on their infringement claim. And on that score neither side has addressed in terms whether for that purpose "the filing of the ... counterclaim" under Section 286 means its actual physical date of filing (in this instance June 14, 1996) or rather its earlier relation-back date or dates (as to that latter alternative, the question is whether the effect of Rule 15(c)(2) is to treat the Counterclaim as having been "filed" as of that earlier date). This Court's brief look at the matter has disclosed no reported case speaking directly to that question, and this Court accordingly expects counsel for the parties to provide their best input on the subject between now and the time of trial.[5]

As for Northlake's laches defense, *Aukerman*, 960 F.2d at 1028 has provided a succinct roadmap to what follows at length thereafter as to that doctrine (*id.* at 1028–41):

1. Laches is cognizable under 35 U.S.C. § 282 (1988) as an equitable defense to a claim for patent infringement.

2. Where the defense of laches is established, the patentee's claim for damages prior to suit may be barred.

3. Two elements underlie the defense of laches: (a) the patentee's delay in bringing suit was unreasonable and inexcusable, and (b) the alleged infringer suffered material prejudice attributable to the delay. The district court should consider these factors and all of the evidence and other circumstances to determine whether equity should intercede to bar pre-filing damages.

4. A presumption of laches arises where a patentee delays bringing suit for more than six years after the date the patentee knew or should have known of the alleged infringer's activity.

5. A presumption has the effect of shifting the burden of going forward with evidence, not the burden of persuasion.

---

**3.** Rule 13(a) reads in relevant part:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

**4.** Here is Rule 15(c)(2):

> An amendment of a pleading relates back to the date of the original pleading when
>
> \* \* \* \* \* \*
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.

**5.** If the legal status of that question turns out to be unsettled, this Court may consider the use of special interrogatories that would call for findings of damages utilizing *both* dates if Glaverbel–Fosbel were to prevail. In that way any need for a retrial would be obviated whichever way the question was ultimately resolved by this Court or on appeal.

■ It is really bizarre for Northlake to urge laches when the parties have been continuously engaged in active and hotly-contested litigation over the validity of Northlake's conduct beginning as soon as *Northlake itself* filed this declaratory judgment action in 1992. This bears no resemblance whatever to the situation in which a patentee has slumbered on its rights, permitting another party to engage in unchallenged activity, and has only then filed suit (after the other party has gone about its business during that period of the patentee's inactivity). Even leaving aside the *Aukerman*–confirmed element of whether there was any unreasonable and inexcusable delay on the part of the patentee (as to which Northlake is really unpersuasive), Northlake fails utterly on the second required element of demonstrating some material prejudice to itself (the alleged infringer) attributable to that delay. No material (or indeed any) prejudice to Northlake attributable to any delay has been shown or even suggested by the record here.[6]

In sum, then, Northlake loses on both its statute of limitations and its laches defense, in each instance as a matter of law. Those matters narrow the scope of the issues on the Glaverbel–Fosbel Counterclaim dramatically, but not so much as to cause the entry of "summary judgment finding liability for infringement under the Counterclaim, reserving damages and the issue of personal liability of May and Hamilton for trial" (Glaverbel–Fosbel Mem. 7). As must be done in addressing Northlake's Count II claim, the ultimate resolution of the Counterclaim requires a determination of the *validity* of the '468 and '084 Patents (for damages cannot be recovered for infringement of an invalid patent).

### Northlake's Count III

Northlake contends in its Count III that the patents in suit are invalid because of Glaverbel's or its counsel's "inequitable conduct" before the Patent Office—what used to be called "fraud on the Patent Office" in the old days. Glaverbel–Fosbel challenge that contention because of Northlake's asserted failure to provide the required proof by clear and convincing evidence of not only (1) the withholding of material information but also (2) an intent to deceive the governmental office. Although Glaverbel–Fosbel acknowledge the existence of a material factual issue on the first of those requirements, they urge that the second element is absent as a matter of law.

As is true with other issues on the present motion, Northlake seeks to blur the issues rather than meeting them head-on. Examination of the issues in their correct focus may well explain the felt need for such obfuscation—because when the subject is placed in that proper light, Northlake loses on this dispute as well.

■ To begin with, Northlake attempts to escape the need to provide clear and convincing evidence of an attempt to deceive by downshifting that second component to a showing of the patentee's "knowledge" of a misstatement—see its GR 12(N) ¶¶ 11–13. But the teaching of the Federal Circuit is unequivocally framed in terms of intent to deceive—see, e.g., *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1573–74 (Fed.Cir.1991) (citations omitted):

> The materiality of a representation, and whether the representation was made with intent to deceive or mislead, are the two essential factual predicates to determination of inequitable conduct. The district court stated that the "three elements of inequitable conduct" are "material prior information, chargeable to applicant, not disclosed to the PTO." Notably missing is the element of intent, essential as a matter of law to a ruling of inequitable conduct. Conduct that requires forfeiture of all patent rights must be deliberate, and proved by clear and convincing evidence.

And *Kingsdown Med. Consultants, Ltd. v. Hollister. Inc.*, 863 F.2d 867, 872 (Fed.Cir. 1988) (citations omitted) is another of the

---

6. This conclusion follows whether the burden of proof (meaning production, not persuasion) on the issue rests on Northlake (as Glaverbel–Fosbel contend) or on Glaverbel–Fosbel (as Northlake would have it). Even if the latter were the case, the fact that Northlake itself has not claimed any prejudice (as it has not) suffices to meet the burden.

numerous cases that deliver that identical message:

> Inequitable conduct resides in failure to disclose material information, or submission of false material information, with an intent to deceive, and those two elements, materiality and intent, must be proven by clear and convincing evidence. The findings on materiality and intent are subject to the clearly erroneous standard of Rule 52(a) Fed.R.Civ.P. and are not to be disturbed unless this court has a definite and firm conviction that a mistake has been committed.

> "To be guilty of inequitable conduct, one must have intended to act inequitably."

Indeed, *Kingsdown* is even more compelling for current purposes, for the Court of Appeals took the occasion there to clarify some of its earlier panel opinions by resolving some critical issues en banc (*id.* at 876 (citations omitted)):

> Some of our opinions have indicated that whether inequitable conduct occurred is a question of law. In *Gardco,* the court indicated that the inequitable conduct question is equitable in nature. We adopt the latter view, i.e., that the ultimate question of whether inequitable conduct occurred is equitable in nature.

> As an equitable issue, inequitable conduct is committed to the discretion of the trial court and is reviewed by this court under an abuse of discretion standard. We, accordingly, will not simply substitute our judgment for that of the trial court in relation to inequitable conduct. "To overturn a discretionary ruling of a district court, the appellant must establish that the ruling is based upon clearly erroneous findings of fact or. a misapplication or misinterpretation of applicable law or that the ruling evidences a clear error of judgment on the part of the district court."

One other facet of the inequitable conduct issue should be mentioned before this opinion returns to *Kingsdown.* In that regard Northlake also resorts to reaching back to old law that no longer has currency—in this instance the 1969 Ninth Circuit decision in *Monolith Portland Midw. Co. v. Kaiser Aluminum & Chem. Corp.,* 407 F.2d 288 (9th Cir.1969). According to Northlake, *Monolith* rejected as legally insufficient the notion that a "good faith belief" on the part of a patentee can serve as a viable defense to a charge of inequitable conduct. That stretches the *Monolith* decision a good bit, as a reading of the opinion itself (*id.* at 295–96) rather than the snippet quoted by Northlake reveals—indeed, that case (in sharp contrast to this one) involved a patentee's "deliberate lies" to the Patent Office (*id.* at 296). But in all events *Kingsdown* has scotched even Northlake's stretched treatment of the *Monolith* case by requiring the consideration for inequitable conduct purposes of all evidence, *including* evidence of such a good faith belief (863 F.2d at 875–76).

In this instance Northlake has proffered nothing to demonstrate (or indeed to create a reasonable inference of) the requisite intent to deceive, such as to support a finding of inequitable conduct. Mere *allegations* to that effect in Count III will not do the job, while Glaverbel–Fosbel have provided specific evidence of Glaverbel's good faith belief that its only prior use was experimental rather than a prior public use for statutory purposes. Under the circumstances here, the earlier-quoted language from the en banc portion of *Kingsdown* fits this case like a glove. Despite Northlake's efforts to muddy the waters by drawing inferences unfavorable to Glaverbel–Fosbel, it has not even come close to a material factual issue as to the prohibited intent to deceive on their part or that of their representatives before the Patent Office.

It will be remembered that the Rule 56 standard mirrors that under Rule 50(a) (*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986))—and if the record now before this Court were to be presented at trial, it would exercise its judgment under the latter rule by rejecting the inequitable conduct defense as a matter of law. Count III is dismissed as well.

### Northlake's Count II

Unlike their position on the other claims, Glaverbel–Fosbel do not launch a global at-

tack on Northlake's Count II claim of the invalidity of the patents in suit. Instead Glaverbel–Fosbel try to narrow the issues on that claim in two respects:

1. They seek to bar Northlake's contention that a British document entitled "Carbonization Section Report, CN 385, Design and Development of a Silica Welding Apparatus," constitutes a prior "publication" in Great Britain and is hence to be considered as prior art.

2. They contend that Northlake has identified no evidence to justify the factfinders' consideration of any asserted violation of the "on sale" or "public use" restrictions of 35 U.S.C. § 102(b).

■ As to the first of those matters, Glaverbel–Fosbel point to the Belgian litigation in which Glaverbel prevailed against Northlake in an infringement action involving three Glaverbel-owned Belgian patents. That prior litigation is not asserted by way of claim preclusion but rather as issue-preclusive: There the Belgian court determined that the document at issue was found "in a private library" and that it could not qualify as having been printed or published because under Belgian law those terms refer to documents "available to the public."[7]

To begin with, it is of course true that as between a Belgian court and this District Court the same full faith and credit that is applicable to the rulings of other courts in this country under the Constitution and 28 U.S.C. § 1738 does not apply. But the case law from our own Court of Appeals teaches that the same result is still called for here, because proceedings in a Belgian tribunal are considered "fundamentally fair" (*Ingersoll Milling Mach. Co. v. Granger*, 833 F.2d 680, 686–88 (7th Cir.1987)), and Northlake has posed no quarrel in that respect. And although the standard of *law* applied by the Belgian tribunal is not the same as ours, the just-recited *factual* findings of the Belgian court, which Northlake is not entitled to relitigate or dispute in this action, conclusively demonstrate that the document is not a "printed *publication*" under the United States patent laws (35 U.S.C. § 102(b)) either (see, e.g., *Northern Telecom., Inc. v. Datapoint Corp.*, 908 F.2d 931, 936 (Fed.Cir. 1990)).

■ As for Glaverbel–Fosbel's second issue-narrowing argument, this Court was called upon to examine the same "on sale" or "public use" issue in the converse context—Northlake's effort to prevail via summary judgment—in this Court's August 29, 1995 opinion (the "Opinion"[8]) at **2–6. At that time this Court was called upon to, and did, examine the matter through a pro–Glaverbel–Fosbel lens—to see whether, with reasonable inferences drawn in favor of Glaverbel–Fosbel, Northlake had established the absence of a material factual issue to defeat its claim of invalidity.

Now however the obverse side of that coin must be examined: With reasonable inferences drawn in Northlake's favor, has it adduced evidence from which a reasonable factfinder could determine that before 1984 (the critical date for on-sale purposes) Glaverbel had sold or publicly employed the ceramic welding process covered by the patents now in suit? In that respect the *only* evidence that Northlake has adduced has been described in the already-cited portion of the Opinion—and Northlake's only evidence of pre–1984 activities is contained in the deposition of Charles Zvosec ("Zvosec").

What Opinion at *4 ("Glaverbel has at a minimum shown the existence of a material

---

7. Rule 44.1 deals with the determination of foreign law, such as that of Belgium in this case. Glaverbel–Fosbel have properly established what the Belgian court *did*. As for the legal significance of that ruling in terms of issue preclusion (the legal concept as framed in American law), neither side has offered anything for this Court's consideration. This opinion has accordingly adopted the same approach that is applicable in diversity cases where parties have not spoken to a choice-of-law question: It has looked instead to the law of the forum (*Wood v. Mid–Valley Inc.*, 942 F.2d 425, 426 (7th Cir.1991)). And that approach is consistent with what 9 Charles

Wright & Arthur Miller, *Federal Practice and Procedure: Civil* 2d § 2447, at 659–60 (2d ed.1995) consider the preferable view—see cases cited *id.* n. 3. In this instance that seems particularly appropriate, given the universality of American law in barring a litigant from relitigating an issue that has once been resolved in a full-blown litigated dispute between the same parties.

8. Citations to the Opinion, which is not reported in F.Supp. but is available on Westlaw (1995 WL 534290) and LEXIS, will be cited "Opinion at *——," referring to the WL pagination.

issue of fact ...") and at *6 ("Northlake seeks to rely only upon inferences, but all such inferences must be construed against it for present purposes") said was of course uttered in the context required at that time. But it must be stressed that those quotations reflect dramatic understatements—even with the inference-drawing perspective reversed, nothing that Northlake has identified by way of evidence enables its "on sale" or "public use" contention to survive scrutiny in the terms dictated by *Anderson*'s linkage of Rules 56 and 50(a).

Thus Glaverbel–Fosbel have also succeeded on both facets of their issue-narrowing motion as to Count II. This action has been substantially contracted in both that and the other respects dealt with in this opinion.

### Conclusion

Glaverbel–Fosbel have succeeded in their current effort to resolve Complaint Count I against Northlake as a matter of law, to dispatch Northlake's statute of limitations and laches defenses to the Glaverbel–Fosbel Counterclaim, to require the dismissal of Complaint Count III and to narrow the issues in Complaint Count II for purposes of trial. With those changes in scope, it is in order to obtain the parties' revised views as to the length of trial and as to their respective availabilities for that purpose. Accordingly a telephonic status hearing is set for 8:30 a.m. March 14, 1997 to discuss those subjects in hopes of setting a prompt trial.

### ATTACHMENT

United States District Court
for the Northern District of Illinois
Eastern Division

Northlake Marketing & Supply,
Inc., Plaintiff,

v.

Glaverbel S.A., et al., Defendants.

Civil Action No. 92 C 2732

**GLAVERBEL/FOSBEL'S LOCAL RULE 12(m) STATEMENT OF UNCONTESTED MATERIAL FACTS**

SHADUR, Senior District Judge.

Glaverbel and Fosbel, pursuant to Local Rule 12(m) submit this Statement of Uncontested Material Facts in support of their motion under Federal Rules 56 and 16.

1. Glaverbel, S.A., a Belgian corporation, is the owner of U.S. Patent No. 4,792,468 ("'468") which issued December 20, 1988. The '468 patent is based upon an application filed in the United States on December 2, 1985, claiming priority under 35 U.S.C. § 119 from an application filed in the United Kingdom on January 26, 1985. The '468 patent is for a method (process) of forming refractory masses. (Northlake proposed Trial Exhibit 3; Second Amended Complaint).

2. Glaverbel, S.A. is the owner of U.S. Patent No. 4,920,084 ("'084") which issued April 24, 1990. The '084 patent is based upon an application filed October 6, 1988 as a division of the application which became the '468 patent, and which also claimed priority based upon the United Kingdom patent application filed January 26, 1985. The '084 patent is for a product (composition of matter) used in forming refractory masses. (Northlake proposed Trial Exhibit 4; Second Amended Complaint).

3. Fosbel served the following Interrogatories Nos. 1 and 2 on Northlake on March 29, 1993:

1. For each paragraph of the Second Amended Complaint, state fully and completely all facts known to Northlake and/or its counsel which supported such paragraph of the Second Amended Complaint at the time that the Second Amended Complaint was filed.

2. For each paragraph of the Second Amended Complaint which remains in this lawsuit, state fully and completely all facts known to Northlake and/or its counsel which support such paragraph of the Second Amended Complaint and which were learned subsequent to the filing of the Second Amended Complaint and indicate the date upon which such facts were learned. (Allen Affidavit ¶ 2).

4. Northlake's Interrogatory Responses include the statements that "Mr. Zlamal, at

one time a principal of Northlake, ordered and used refractory powders which fall within the claims of the '468 and '084 patents" and "[F]rom that time forward, plaintiff has continued to use the same basic refractory powders." (Allen Affidavit ¶ 5).

5. Northlake's Interrogatory Responses specifically do not identify anything in any claim of the '468 and/or '084 patents which is not found in the Northlake ceramic welding powder (product) and/or method. (Allen Affidavit ¶¶ 6–7).

6. Northlake's Interrogatory Responses raise the defenses of laches and statute of limitations with the following language:

In addition, plaintiff contends that it is entitled to a declaration of non-infringement on the grounds of laches and statute of limitations. Fosbel and Glaverbel have had Northlake's product since at least 1987. Those patents were issued by April 24, 1990. Glaverbel threatened an infringement action in March 1992. This lawsuit was filed in April 1992. However, Glaverbel has not filed an action against Northlake alleging infringement of the '468 or '084 patents. (Allen Affidavit ¶ 8).

7. Northlake does not allege, in any of its Interrogatory Responses that any purported delay by Glaverbel and/or Fosbel in filing a counterclaim for infringement was unreasonable. (Allen Affidavit ¶ 9).

8. Northlake does not allege, in any of its Interrogatory Responses that any purported delay by Glaverbel and/or Fosbel in filing a counterclaim for infringement was inexcusable. (Allen Affidavit ¶ 10).

9. Northlake does not allege, in any of its Interrogatory Responses that it suffered any material prejudice attributable to any purported delay by Glaverbel and/or Fosbel in filing a counterclaim for infringement. (Allen Affidavit ¶ 11).

10. Northlake's Supplemental Interrogatory Answer as it relates to Count III states:

Plaintiff contends that the '468 and '084 patents were obtained through fraud or inequitable conduct and are not enforceable. The claim is that Glaverbel either knew that it had commercially used refractory powders falling within the patent claims or that it failed to test its own material. In either case, Glaverbel acted inequitably or fraudulently in obtaining the patents.

Moreover, in order to overcome a final rejection of the '468 patent, Glaverbel submitted a declaration of one of the inventors with a diagram of a sigmoid curve. This diagram related to one specific embodiment found in the '560 patent. By filing this one diagram and attesting that it was indicative of all the powders used, while ignoring the other refractory powders it used, Glaverbel withheld material from the Patent Office."(sic) (Allen Affidavit ¶ 12).

11. Northlake's Interrogatory Responses do not allege any "intent" on the part of Glaverbel and/or Fosbel. (Allen Affidavit ¶ 13).

12. Northlake's Interrogatory Responses do not allege any "intent to deceive" on the part of Glaverbel and/or Fosbel. (Allen Affidavit ¶ 13).

13. Northlake's Interrogatory Responses do not allege any "intent to mislead" on the part of Glaverbel and/or Fosbel. (Allen Affidavit ¶ 13).

14. Northlake did not depose any of the inventors of the '468 and/or '084 patents in this lawsuit. (Allen Affidavit ¶ 14).

15. Northlake did not depose any representative of Glaverbel in this lawsuit. (Allen Affidavit ¶ 14).

16. Northlake's proposed trial exhibit 64 is a document entitled "Carbonisation Section Report" "The Design and Development of a Silica Welding Apparatus" CN 385, Coal Research Establishment, National Coal Board, Stoke Orchard. That document bears the legends "CONFIDENTIAL" and "3rd Copy" which were on the document when it was received from Northlake. (Allen Affidavit ¶ 16 and Exhibit 8 thereto).

17. In the Belgian litigation between Glaverbel and Northlake, the Belgian court held that the document entitled "Carbonisation Section Report by the Coal Research Establishment of the National Coal Board," dated May 1981 was not available to the

public, was not printed and was not published. (Allen Affidavit ¶ 19 and Exhibit 9 thereto).

18. Northlake's Interrogatory Responses do not allege how or why exhibit 64 is public, nor do those Interrogatory Responses identify any witness to explain the CONFIDENTIAL legend or the "3rd Copy" legend on proposed trial exhibit 64. (Allen Affidavit ¶ 16 and Exhibit 9 thereto).

19. Northlake's Interrogatory Responses do not identify any witness whose proposed testimony includes a challenge to the decision of the Belgian Court relative to proposed trial exhibit 64 and/or to demonstrate that the proposed exhibit actually qualifies as a printed or published document and/or was available to the public. (Allen Affidavit ¶¶ 17, 20).

20. Northlake's Interrogatory Responses do not identify any witness whose proposed testimony will be that the specific powders tested by Zvosec were actually publicly used. (Allen Affidavit ¶ 22).

21. Northlake's Interrogatory Responses do not identify any witness whose proposed testimony will be that the inventors of the '468 and '084 patents did not believe that their work was experimental prior to January 26, 1984. (Allen Affidavit ¶ 23).

Dated: January 15, 1997

/s/ Respectfully submitted,

/s/ Jerold I. Schneider
Jerold I. Schneider
DORSEY & WHITNEY LLP
1300 Connecticut Ave. N.W.
Suite 200
Washington, D.C. 20036
(202) 452–6900
Attorneys for Glaverbel, S.A. and Fosbel, Inc.

## SUPPLEMENT TO MEMORANDUM OPINION AND ORDER

In further preparation for the newly-scheduled March 14, 1997 status hearing in this patent action, this Court has taken one last look at the memorandum opinion and order that it issued only yesterday (the "March 11 Opinion").[1] On further examination this Court believes that one aspect of its final determination in that Opinion—the aspect dealing with narrowing the issues for trial on Northlake's Count II challenge to the validity of the patents in suit—calls for some elaboration of a subject that this Court had viewed as implicit in its decision as to the "on sale" or "public use" restriction of 35 U.S.C. § 102(b) (March 11 Opinion at 379–380).

As the March 11 Opinion at 379 made clear, *Anderson,* 477 U.S. at 250–52, 106 S.Ct. at 2511–12 teaches that the legal test for determining whether any of Northlake's positions survives a Rule 56 challenge coincides with the standards that Rule 50(a) sets for a court's determinations regarding judgments as a matter of law. Thus it is not really true that Rule 56 forbids *any* scrutiny of the weight of the evidence presented to the court (a subject to which *Anderson, id.* at 249, 106 S.Ct. at 2510–11 speaks very briefly), for *Anderson, id.* at 251–52, 106 S.Ct. at 2511–12 describes the decision under both rules this way:

> In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

What should be added to what was said in the March 11 Opinion—a concept that this Court applied in reaching its decision there, but that should perhaps have been made more explicit—is that just as with the other issues discussed in the March 11 Opinion, Northlake's evidentiary hurdle for establishing its "on sale" or "public use" defense is one requiring clear and convincing evidence in support of that defense. Here is how *Envirotech Corp. v. Westech Eng'g, Inc.,*

---

1. This supplement will employ (without redefining) various of the defined terms in the March 11 Opinion.

904 F.2d 1571, 1574 (Fed.Cir.1990) (citations omitted) has put the matter:

> The party asserting the on sale bar must prove by "clear and convincing evidence," "that there was a definite sale or offer to sell more than one year before the application for the subject patent, and that the subject matter of the sale or offer to sell fully anticipated the claimed invention or would have rendered the claimed invention obvious by its addition to the prior art." Whether an invention is on sale is a question of law, and no single finding or conclusion is a *sine qua non* to its resolution. "[T]he totality of the circumstances must always be considered in order to ascertain whether an offer of the new invention was in fact made."

And *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 549 (Fed.Cir.1990) (citations and footnote omitted) has also made it equally clear that the question at issue is one of law to be decided by this Court in light of the factual record:

> As the parties asserting that on sale and public use bars apply to Manville's invention, Appellants must prove the existence of a bar by clear and convincing evidence. Whether or not an invention was on sale or in public use within the meaning of section 102(b) is a question of law that this court reviews de novo; however, factual findings underlying the trial court's conclusion are subject to the clearly erroneous standard of review.

In the present context of claimed experimental use rather than "public use," *Sinskey v. Pharmacia Ophthalmics, Inc.*, 982 F.2d 494, 498 (Fed.Cir.1992) (most citations omitted) has explained the respective burdens of attacker Northlake and patentee Glaverbel–Fosbel:

> The statutory presumption of validity under 35 U.S.C. § 282 puts the burden of proving invalidity on the party asserting it and the burden never shifts to the patentee. But where experimental use is raised to defeat a claim of anticipation under 35 U.S.C. § 102(b), the patentee is not wholly relieved of obligation. According to *TP Laboratories, Inc. v. Professional Positioners, Inc.*, 724 F.2d 965, 971, 220 USPQ 577, 582 (Fed.Cir.1984), the court must

look to the totality of the circumstances to determine whether there has been a public use within the meaning of section 102(b). On summary judgment, once an alleged infringer has presented facts sufficient to establish a *prima facie* case of public use, it falls to the patent owner to come forward with some evidence to the contrary sufficient to raise a genuine issue of material fact.

\*    \*    \*    \*    \*    \*

> To establish that an otherwise public use or sale does not run afoul of section 102(b), it must be shown that the activity was "substantially for purposes of experiment." Objective evidence such as the length of the test period, whether payment was made for the device, whether there was a secrecy agreement, whether progress reports were kept, whether someone other than the inventor conducted the experiments, and the overall number of tests may be considered.

It was in light of that approach and of Northlake's clear-and-convincing evidence burden that the March 11 Opinion reviewed what was before this Court.

When the limited submissions by Northlake are taken in that light, there is some question whether they even suffice to establish a prima facie case of public use. But even if that threshold question deserves an affirmative answer, what is crystal-clear is that the "totality of the circumstances" here, just like that discussed in *Manville*, 917 F.2d at 550–51, compels the conclusion announced in the March 11 Opinion at 380. To escape an adverse ruling under Rule 56, a responding party such as Northlake must proffer a genuine issue of material (that is, outcome-determinative) fact. Here there is no way in which a factfinder could reasonably determine that Northlake could meet a clear-and-convincing-evidence test for its "on sale" or "public use" defense, and on that score the evidence "is so one sided that one party [here Glaverbel–Fosbel] must prevail as a matter of law" (*Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512).