**NORTHLAKE MARKETING & SUPPLY, INC., et al., Plaintiffs,**

v.

**GLAVERBEL, S.A., et al., Defendants.**

No. 92 C 2732.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 13, 1997.

Supplemental Opinion
Dec. 19, 1997.

---

4. The videotape was entered into the record upon a joint motion of the parties.

John C. Brezina, Brezina & Ehrlich, Oak Brook, IL, Anthony S. DiVincenzo, Campbell & DiVincenzo, Chicago, IL, for plaintiff.

Jerold I. Schneider, Dorsey & Whitney, L.L.P., Washington, DC, for defendant.

## MEMORANDUM OPINION
## AND ORDER

SHADUR, Senior District Judge.

This patent infringement battle between Northlake Marketing & Supply, Inc. ("Northlake") and its principals James Hamilton ("Hamilton") and Samuel May ("May") on the one hand and Glaverbel, S.A. ("Glaverbel") and Fosbel, Inc. ("Fosbel") on the other hand[1] has raged over many years, a number of courts and two continents. With this action having resulted in March of this year in a determination in this Court's "Opinion" (958 F.Supp. 373 (N.D.Ill.1997))[2] that Northlake's ceramic welding powder and process infringed the Glaverbel patents in suit (referred to here, as in the Opinion and other earlier opinions, as the "'468 Patent" and "'084 Patent"), this Court then conducted a May hearing (the "Hearing") into the question of patent validity. It is Northlake's contention that claims in both Patents (without, however, precisely specifying which claim or claims) are invalid on grounds of anticipation (35 U.S.C. § 102(a), "Section 102(a)") and obviousness (35 U.S.C. § 103, "Section 103").

Because Northlake and its principals are the attackers of the two patents in a declaratory judgment action, and because the presumptive validity of the patents under 35 U.S.C. § 282 places the burden of proving invalidity by clear and convincing evidence on such attackers (*Trans–World Mfg. Corp. v. Al Nyman & Sons, Inc.,* 750 F.2d 1552, 1559–60 (Fed.Cir.1984)), Northlake put in its proof at the inception of the Hearing. Glaverbel–Fosbel then filed a Fed.R.Civ.P. ("Rule") 52(c) motion for a judgment as a matter of law, and some related motions as well, and the parties have since submitted their respective proposed findings of fact ("Findings") and conclusions of law ("Conclusions") to assist this Court in complying with Rule 52(c) and that Rule's incorporation of Rule 52(a).

This Court has regrettably been compelled to turn its efforts elsewhere for an extended period of time since receiving those submissions, thus delaying its ability to address the matters at issue here. But as it turns out, this Court's delayed return to the case has permitted a better perspective and, importantly, a simpler one. Instead of having to pick its way through the extended minutiae of the parties' submissions, this Court finds it possible to issue this memorandum opinion and order in that more straightforward and simplified light—at the end of which opinion this Court inquires of the litigants whether anything more is needed.

As one adjunct to the Glaverbel–Fosbel submissions, they have moved that the opinion evidence of Northlake's "expert" witness Professor Philip Nash ("Nash") be stricken in principal part because he lacks expertise in ceramic welding, though he may well be qualified—even eminently qualified—to opine in other areas in which he really qualifies as an expert (for another example of such a shortcoming, see *Wintz v. Northrop Corp.,* 110 F.3d 508, 512–14 (7th Cir.1997)). And relatedly, Glaverbel–Fosbel seek to strike Northlake's Ex. 23–2 generated by Nash. Both aspects of that Glaverbel–Fosbel motion are quite persuasive, for Nash's testimony and the challenged exhibit certainly appear to present prototypical examples that call for rejection under the principles of *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), as those principles extend to all types of testimony that come within the categories set out in Fed.R.Evid. ("Evid R.") 702 (our Court of Appeals has confirmed on a number of occasions that a *Daubert*-type analysis, perhaps with appropriate modifications, applies to all proposed expert testimony rather than its being confined to the hard sciences—see, e.g., *Tyus v. Urban Search Management,* 102 F.3d 256, 263 (7th Cir.1996), *Shee-*

---

1. For convenience this opinion will most frequently also refer to all three plaintiffs collectively as "Northlake," treated as a singular noun (a usage that should not create any confusion in the contexts where it is employed). As for defendants, they will be referred to collectively as "Glaverbel–Fosbel."

2. Citations to the Opinion will take the form "Opinion at ——," omitting the F.Supp. volume number.

*han v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir.1997) and cases cited in both those decisions).[3] But as the ensuing discussion reflects, Glaverbel–Fosbel prevail without any need for the formal striking of the Nash testimony and Northlake Ex. 23–2: Even when those things are considered "for what they are worth," Northlake has not carried its burden.

To turn to the principal issues at hand, Northlake's counsel had been extraordinarily elusive both before and during the Hearing in identifying precisely what they claim calls for the determinations of anticipation and obviousness for which they argue. This Court has therefore welcomed their proposed Findings and Conclusions as a means to pin down their real contentions. Although that document puts the cart before the horse by placing the proposed Conclusions first, when Northlake does gets around to the claimed factual assertions on which it relies, it speaks of three things as supporting its position:

1. Northlake's own ceramic welding for a single demonstration in 1984, and then its other asserted welding between 1984 and 1986, are said to anticipate the patents now in suit (proposed Findings 17–19 and 34).

2. Example VIII of one of Glaverbel's own earlier patents issued in December 1984 (United States Patent No. 4,489,022 (" '022 Patent")) is also said to constitute prior art anticipating the patents now in suit (proposed Findings 28–33).

3. When the '022 Patent is looked at in view of an even earlier 1972 patent of Glaverbel's (United States Patent No. 3,684,560 (" '560 Patent")) and a 1981 article published in the *Journal of the Canadian Ceramic Society* entitled "Repair of Glass Furnaces by Ceramic Welding Techniques," that combination is said to render obvious to a person skilled in the art the teaching of the two patents now in suit (proposed Findings 36–39).

Each of those three contentions fails.

### Northlake's Activities

■ On this first of Northlake's arguments, the matter boils down to a failure of proof on Northlake's part. No one provided any evidence on its behalf, nor is there a legitimate basis for inference, as to the relevant particle size distributions in the 1984 demonstration that is said to have taken place at United States Steel. Northlake's use of oral testimony alone regarding that alleged demonstration (something that has been disfavored for more than a century (*The Barbed Wire Patent Case*, 143 U.S. 275, 284–85, 12 S.Ct. 443, 447, 36 L.Ed. 154 (1892)) and that continues to be looked at askance in current Federal Circuit case law, see, e.g., *Sjolund v. Musland*, 847 F.2d 1573, 1578 (Fed.Cir.1988) and *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577 (Fed.Cir.1996) and earlier cases cited there) cannot properly be buttressed by testimony about Northlake's *later* efforts to purchase a silica product. And even apart from the serious doubt that the trial demonstration at United States Steel was "commercial"—that is, public—as is required by the relevant case law (see, e.g., *Chester v. Miller*, 906 F.2d 1574, 1577 n. 2 (Fed.Cir.1990)), there is no evidence to support either the participants' knowledge (May testified in that regard) or the facts as to the composition of the powder involved—and that composition of course is critical to the essence of the Glaverbel invention, and hence to any potential for anticipation of that invention. Northlake simply has not met any burden of proof (however measured) along those lines.

As for Northlake's claimed ceramic welding activity between that September 1984 date and 1986, it should first be said that Northlake's proposed Finding 18 creates an erroneous impression of continuous welding

---

**3.** As chance would have it, this Court has served on the Advisory Committee on the Rules of Evidence ever since, about five years ago, Chief Justice Rehnquist appointed a newly-revived committee after a hiatus that had existed ever since the original adoption of the Rules of Evidence. At the Advisory Committee's last meeting a little less than a month ago, this Court was named to chair a newly-formed subcommittee to consider and draft proposed revisions to Evid. R. 701 to 703 in light of *Daubert* and the many cases that have applied its principles since it was decided.

activity on its part. Instead May's testimony was that it began such activity in the spring of 1986. More importantly, however, again Northlake fails in evidentiary terms to tie its usage to powder providing the particle sizes and granulometry that the '468 and '084 Patents set out as the critical components of the Glaverbel invention. Again any claim of anticipation based on Northlake's pre-Patent activities fails.

### Glaverbel's Prior Patents

■ As stated at the outset of this opinion, this is only the latest chapter in the protracted and wide-ranging war between the parties. Most critically for present purposes, Glaverbel–Fosbel correctly contend that Northlake is foreclosed by issue preclusion principles from relitigating a contention that they have earlier tried and lost in Belgian litigation between the same parties: Northlake's assertion that Glaverbel's two prior art patents (the '022 and '560 Patents, the only patents on which Northlake relies to sustain its position) disclose the same invention as the now-at-issue '468 and '084 Patents. Whether Seventh Circuit jurisprudence (see *Havoco of Am., Ltd. v. Freeman, Atkins & Coleman, Ltd.,* 58 F.3d 303, 307–08 (7th Cir. 1995)) is to be looked to because the Federal Circuit would defer to it on substantive issues not unique to patent law (*Hybritech Inc. v. Abbott* Labs., 849 F.2d 1446, 1451 n. 12 (Fed.Cir.1988)), or whether the Federal Circuit's own case law (see *In re Freeman,* 30 F.3d 1459, 1465 (Fed.Cir.1994)) would control instead, the elements of issue preclusion are precisely the same: (1) each of the two lawsuits involved the issue that is now under consideration as potentially precluded from relitigation, (2) that issue was actually litigated in the earlier lawsuit, (3) determination of that issue was necessary to a final decision there and (4) the losing party had an opportunity to litigate that issue fully and fairly.

■ Although Northlake seeks to wriggle out of its own earlier acknowledgment to that effect, there is no dispute that the Belgian patents at issue (those involved in the Belgian litigation that Northlake lost (*S.A. Glaverbel v. Northlake Marketing & Supply, Inc.,* No. 84.507 (Feb. 7, 1995))) and the prior Belgian patents that Northlake had there argued to have disclosed the same invention match up precisely to the corresponding United States patents now in suit and the prior art United States patents on which Northlake relies to claim invalidity. As for the '468 and '084 Patents now in suit, the parties' Joint Stipulation of Uncontested Facts ¶ 9, which is part of the Final Pretrial Order here, states:

Belgian Patent 903.711 is a patent corresponding to the '468 and '084 patents.

And as for the prior art United States patents to which Northlake seeks to point in this litigation and the prior art Belgian patents that it relied on for its identical contention in the litigation there, Hamilton's own affidavit—filed on another battle front, in the United States District Court for the Northern District of Indiana in case number 2:96–CV–32–TS, states:

10. American patent number 4,489,022 is the equivalent of Belgian patent number 895.067.

11. American patent number 3,684,560 is the equivalent of Belgian patent number 757.466.

What the Belgian court said in its decision rejecting Northlake's position was that the latter's argument that the later Belgian patent was "null and void because of lack of novelty and/or originality" was based on Northlake's contention that the terms of the later Belgian patent in suit there "had already been made known in the patents number 757.466 and 895.067." And in like fashion, Nash—who addressed the same contention at the Hearing—unequivocally agreed with the manner in which Glaverbel–Fosbel counsel summarized Nash's testimony as stating that when the prior art '560 and '022 Patents were compared to the '468 Patent now in suit, "everything was already known from the first two patents" (Tr. 181):

Q. So my summary statement is accurate. There is really nothing new, everything was already known?

A. Yes.

So there is no question that the identical issue that is now in question was involved in the Belgian litigation and is now involved in

this lawsuit. And the Belgian court's decision at 32 expressly confirmed that the issue was actually litigated there, while the Belgian factfinding on that issue was necessary to that court's final decision (if instead Northlake had prevailed on that factual issue, it would have *won* on its contention that the later Belgian patent lacked novelty or originality, so that Northlake would not have been liable for infringement because the later 903.711 patent would have been a nullity). And finally, as 958 F.Supp. at 379 has confirmed regarding the fundamentally fair nature of proceedings in a Belgian tribunal (*Ingersoll Milling Mach. Co. v. Granger,* 833 F.2d 680, 686–88 (7th Cir.1987)), Northlake indisputably had a full and fair opportunity to present its case in that forum.

Hence Glaverbel–Fosbel win and Northlake loses on the issue-preclusive effect of the vital fact determinations in the Belgian litigation. It takes nothing more than an extended application of the axiom that if A = C and B = C, then A = C to compel that conclusion here—that is the necessary consequence of the identities among the respective foreign and United States patents. Because the Belgian court's finding of fact—its finding that the equivalent Belgian patent in suit had not been disclosed by the equivalent prior art Belgian patents—by definition establishes the corollary that the '560 and '022 Patents do not disclose the invention of the '468 and '084 Patents, Northlake cannot relitigate that issue here. And that means that Northlake is knocked out of the box on that score, both in terms of anticipation and in terms of obviousness (the latter because contrary to Nash's acknowledgments regarding Northlake's contention, there are differences between the prior art and the claims of the patents now in suit).

### Canadian Article Coupled With Other Factors

■ As stated earlier, Northlake also attempts to rely on a 1981 article in a Canadian journal as part of the pre-patent mix that, together with the other pre-existing factors already discussed, assertedly rendered the later disclosure in Glaverbel's '468 and '084 patents invalid on obviousness grounds. In that respect Northlake's difficulty is again one of inadequate proof, this time of a somewhat different sort.

That journal article, dealing as it does with a subject that is technical and complex in nature (particularly in terms of what it does or does not purportedly disclose in relation to the subject matter of the patents in suit), has been proffered by Northlake for this Court's consideration without any testimonial anchor whatever. Glaverbel–Fosbel are correct in their statement in opposition to Northlake's proposed Finding 27 that the description in the article needs interpretation at a minimum. It is certainly not self-explanatory in terms of the respect or respects in which it does or does not address the particle sizes or size range spread factors that form the heart of the later '468 and '084 Patents.

Finally, any contention that the Canadian article, together with the other items that Northlake seeks to lean upon, calls for a finding of obviousness amounts to adding a number of zeroes and coming up with a finite number. In patent law as in basic mathematics, that simply won't work.

### Summary of What Has Gone Before

It must be stressed, as stated earlier, that the burden of overcoming the presumptive validity of the '468 and '084 Patents rests on Northlake. Neither singly nor in combination have the matters that it has identified done so, even if measured by a preponderance of the evidence, let alone by meeting the law's requirement of clear and convincing evidence to that effect. It then remains necessary only to discuss briefly the undisputed legal principles against which that failure on Northlake's part must be evaluated.

### Law of Anticipation and Obviousness

■ As just indicated, there is no real quarrel between the litigants over the legal requirements of an attack on patent validity on grounds of anticipation or obviousness. Though in that respect Northlake muddies the waters somewhat by referring, for example, to the "invalidity and unenforceability" of a patent under Sections 102(a) and 103—while the statutes actually speak to unpatentability (and hence invalidity alone) and of an

invention (and hence a patent claim, rather than to the totality of a patent as such)—the operative principles are undisputed:

1. Anticipation under Section 102 requires that a prior art patent or other prior art must meet every element of the claimed invention (*Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1379 (Fed.Cir.1986)), something that is a question of fact (*id.*) just as is the teaching of a prior art reference (*In re Graves*, 69 F.3d 1147, 1151 (Fed.Cir.1995)). To that end the claimed invention must necessarily be present in the prior art, rather than it being enough simply to show "that a certain thing *may result* from a given set of circumstances" (*Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1052 (Fed.Cir.1994)).

2. Under the seminal teaching of *Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 693–94, 15 L.Ed.2d 545 (1966), Section 103 obviousness is a question of law based upon underlying factual inquiries—a function of the scope and content of the prior art, differences between the prior art and the claims at issue and the level of ordinary skill in the pertinent art (*id.*). To that end it is improper to look at the matter through the inventor's eyes—or through the lens later shaped by the inventor—in contrast with looking to persons of ordinary skill in the art, and to the state of the art that had existed at the time of the invention (*Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1138 (Fed.Cir.1985)). By definition the teaching in the inventor's later specification cannot be treated as prior art (*In re Pleuddemann*, 910 F.2d 823, 828 (Fed.Cir.1990)). Because the prior discussion has shown that Northlake's proofs have failed to meet each of those sets of criteria, nothing further should be required by way of formal Conclusions.

## Conclusion

This opinion has employed a narrative form rather than following the format, as employed in the parties' proposed submissions (or in this Court's usual practice), of numbered paragraphs. It has done so both because the subject matter best lends itself to such treatment and because so many of the detailed matters that have been covered in the Glaverbel–Fosbel submission have proved nonessential to the conclusions announced here.[4] But what has been said here should readily suffice to satisfy Rule 52(a) and (c).

Most simply put, Northlake has struck out—once again. It has failed to advance either of its contentions through the requisite clear and convincing evidence (indeed, it would have failed even under a less demanding preponderance-of-the-evidence standard). Because Northlake has not overcome the presumptive validity of the Glaverbel patents in suit and because this Court has previously found it to have infringed those patents, this Court is concurrently entering an order granting a permanent injunction in favor of Glaverbel and Fosbel against further infringement of the '468 and '084 Patents. And because the second step of this bifurcated proceeding is now required to establish the damages to which Glaverbel and Fosbel are entitled, this action is set for a telephonic status conference at 8:30 a.m. November 21, 1997.

## PERMANENT INJUNCTION ORDER

This action is presently before this Court on the application of Glaverbel, S.A. ("Glaverbel") and Fosbel, Inc. ("Fosbel") for a permanent injunction against further infringement of United States Patent Nos. 4,792,468 ("'468 Patent") and 4,920,084 ("'084 Patent") by Northlake Marketing & Supply, Inc. ("Marketing & Supply"), Northlake Industries, Inc. ("Industries"), James Hamilton ("Hamilton") and Samuel May ("May") (all four of those counterdefendants and third party defendants are collectively referred to here as "Northlake," treated as a singular collective noun only to avoid awkwardness of language). Following an earlier ruling on a motion of law (reported at 958 F.Supp. 373 (N.D.Ill.1997)) and a more recent evidentiary hearing ("Hearing"), this Court has found

---

4. Northlake's corresponding submissions, though shorter, obviously could not be used as a springboard because they were consistently wrong in light of the evidence adduced at the Hearing.

that Northlake has infringed the '468 and '084 Patents issued to Glaverbel and that Northlake has not established the invalidity of any claim of either of those Patents.

IT IS HEREBY ORDERED that:

1. Marketing & Supply, Industries, Hamilton and May, jointly and severally, and their respective agents, officers, employees and attorneys who may be acting in active concert or participation with one or more of them, are permanently enjoined from any further infringement of one or more claims of either or both of the '468 and '084 Patents. In that respect it appears from the Hearing that none of Marketing & Supply, Industries, Hamilton and May has tested any ceramic welding powder or components of ceramic welding powder to determine if there has been any infringement of one or more claims of either of those Patents, nor does any of the enjoined parties have equipment for such testing.

2. Marketing & Supply, Industries, Hamilton and May, jointly and severally, and their respective agents, officers, employees and attorneys who may be acting in active concert or participation with one or more of them, are also permanently enjoined from any and all forms of welding repair (a) unless for each batch of welding powder a certified analysis is made by an independent entity confirming that the size range spread factor of the refractory powder, as it is to be used, is less than 1.2 and (b) unless, contemporaneously with the use of such powder by any of the enjoined parties, a copy of each analysis is provided to counsel for Glaverbel under the Protective Order previously entered in this action.

3. Both injunctive orders in Paragraphs 1 and 2 shall apply to Hamilton and May both in their individual capacities and in their representative capacities, and shall further apply to each of them regardless of the entity on whose behalf either of them may hereafter be employed.

4. By reason of the respective expiration dates of the patents in suit, the foregoing injunctive provisions as to the '468 Patent shall extend until December 20, 2005 and as to the '084 Patent shall extend until October 6, 2008.

## SUPPLEMENT TO MEMORANDUM OPINION AND ORDER

This Court's November 13, 1997 memorandum opinion and order (the "Opinion") found in favor of Glaverbel, S.A. ("Glaverbel") and Fosbel, Inc. ("Fosbel") and against Northlake Marketing & Supply, Inc. and its principals James Hamilton and Samuel May (collectively "Northlake") on the Glaverbel–Fosbel claims of infringement of the '468 Patent and '084 Patent referred to in the Opinion.[1] In the Opinion this Court rejected Northlake's contentions that the patents in suit are invalid on grounds of anticipation and obviousness. And in important part that ruling was based on what Opinion at 476 said was "the issue-preclusive effect of the vital fact determinations in the Belgian litigation between the parties," the Opinion having explained in some detail why that was so "both in terms of anticipation and in terms of obviousness (the latter because contrary to Nash's acknowledgments regarding Northlake's contention, there *are* differences between the prior art and the claims of the patents now in suit)" (Opinion at 475–76).

Now Glaverbel–Fosbel, in an effort to hold their victory up with the aid of both belt and suspenders, have tendered a "Motion for Supplementation of Memorandum Opinion and Order." In candor, what they seek should probably not be necessary—in this Court's view, the Opinion left no room for any belief that this Court's ruling included any element of attributing preclusive effect to the Belgian court's determinations of substantive patent *law* (which would necessarily pose questions of Belgian rather than United States law), as contrasted with that court's determinations of *fact* (as to which this Court determined the question of preclusiveness as

1. All terms defined in the Opinion are used in this supplement without troubling to repeat those definitions (except for the names of the litigants, which have been repeated in the opening sentence of the text solely in the interest of clarity).

a matter of United States law). At the same time, because what Glaverbel–Fosbel have now requested is totally consistent with the Opinion, this Court sees no harm in confirming its determinations in the more particularized way that they now seek.

Accordingly this supplement to the Opinion grants the Glaverbel–Fosbel motion. What follows is simply a brief elaboration of what from this Court's perspective has already been said (albeit in somewhat different language) in the Opinion itself.[2]

In each of the '468 and '084 Patents, the patent claims include a requirement that "the size range spread factor f(g) of the refractory particles is at least 1.2." In part the Belgian court, ruling on the Belgian prior art equivalents of the '560 and '022 Patents, found as a matter of fact that the prior art patents did not disclose that feature. And so because Northlake is precluded from litigating that fact in this action, it has failed to prove that every element of any of the claims in the '468 or '084 Patents exists in any one item of prior art, and Northlake has thus failed to prove anticipation under United States law (see Opinion at 477).

By the same token, because the Belgian court found as a matter of fact that the corresponding prior art (that is, the Belgian patents that are concededly the equivalents of the '560 and '022 Patents) did not disclose the "size range spread factor," the absence of that factor in the prior art patents necessarily constitutes at least one difference between the prior art and the claims of the '468 and '084 Patents. That being so, even if this Court were to accept Northlake's contentions regarding the level of skill in the art, Northlake offered no credible evidence as to the "obviousness" of *any* "size range spread factor" (because Northlake was incorrect as to any showing of the size range spread factor of the refractory particles of the '022 Patent).

Hence Northlake has also failed to meet its burden of proof on obviousness. Its insufficient factual showing in that respect confirms its failure to satisfy the requirements for a determination of obviousness under the seminal decision in *Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 693–94, 15 L.Ed.2d 545 (1966)(see Opinion at 477).

---

2. This supplement had been dictated in substantially this form, subject to potential modification based on what Northlake's response might be at the time of presentment of the Glaverbel–Fosbel motion on this Court's motion call this morning. At that time Northlake's counsel advised that within the last several days Northlake had filed a notice of appeal to the Court of Appeals for the Federal Circuit of this Court's November 13, 1997 Permanent Injunction Order (the "Order," which had been issued contemporaneously with, and for the reasons explained in, the Opinion). Even apart from the question whether that appeal ousts this Court of jurisdiction to enter any operative orders (on that score, the Order expressly specifies that the issue of the Glaverbel–Fosbel damages remains to be resolved), this explanatory supplement is not intended to—and does not—purport to modify the Order (or any other order of this Court) in respect.